[Civ. No. 173.   Fourth Appellate District.—November 23, 1931.]

PLACENTIA COOPERATIVE ORANGE GROWERS AS-SOCIATION (a Nonprofit Cooperative Association), Appellant, v. LEWIS HENNING, Respondent.

Ivan G. McDaniel and James C. Hayne for Appellant.

Forgy, Reinhaus & Forgy, James L. Davis, A. M. Bradley and S. M. Reinhaus for Respondent.

JENNINGS, J.—In this action judgment was rendered in favor of defendant at the conclusion of a trial wherein the issues raised by the pleadings were submitted to a jury which returned a verdict for defendant. From the judgment thus rendered and from the court's order refusing a new trial, plaintiff has appealed.

The cause of action alleged in the complaint was for the recovery of a sum of money as liquidated damages arising from the breach of a contract made by respondent with appellant. From the record herein, it appears that at all times material to the controversy, appellant was a nonprofit. association organized for the purpose of enabling its members to conduct jointly the operation of harvesting and marketing citrus fruits grown upon land owned by such members. The grower's contract and the by-laws of appellant provide that so long as a grower of citrus fruit remains a member of the association he is obligated to pack and market all citrus fruit grown on land covered by the grower's contract through appellant association; that his membership in the association continues from year to year unless terminated as provided in the by-laws, one method of termination being the right to withdraw by giving written notice to the secretary of the association between the 1st and 15th of December, in each year, in which event the termination of membership becomes effective on the first day of January next succeeding. It is further provided in the by-laws that any member who violates the provision requiring him to pack and market his fruit through the appellant association shall be liable to pay to appellant the sum of fifty cents per box for every field box of fruit packed or marketed outside of the association. It is undisputed that, during the year 1929, respondent marketed 22,229 field boxes of oranges through agencies other than appellant.

Respondent's answer alleges that he entered into an oral contract with the manager of appellant on August 8, 1928, to deliver all the fruit from his ranch to appellant for packing and marketing for the year 1928 only; that on August 16th he was induced by said manager to sign and did sign a grower's contract in blank; that in such contract the blank spaces provided for indicating the dates between which notice of cancellation might be given and the date when cancellation would become effective were not filled in; that respondent was not furnished with a copy of the contract or by-laws of the association and was not given a membership certificate in the association; that the manager of appellant stated to respondent at the time the blank contract was signed by respondent that said manager would so fill in the blank spaces and would so change the agreement that it would be a contract for the 1928 season only and would definitely terminate at the end of said season without notice; that the said manager thereafter with intent to deceive and defraud respondent filled in the various blank spaces so that it contained the provision requiring respondent to give written notice of cancellation between the first and fifteenth days of December in order to accomplish withdrawal from the association; that the contract thus completed was not the true agreement entered into between the parties but that the true agreement was for the handling of respondent's fruit for the 1928 season only.

The defense thus raised by the answer is that through the fraud of appellant's manager, the written contract for whose breach the action was instituted does not express the real intention of the parties, a defense recognized and permitted by the provisions of our substantive law (sec. 1640, Civil Code). The evidence produced by respondent in support of the allegations contained in his answer consists of the testimony of respondent alone. It was contradicted not only by the testimony of appellant's manager but in many material features by the testimony of other witnesses. The conflict in evidence thus produced was resolved in respondent's favor by the verdict of the jury and under the familiar rule this determination may not be upset. Appellant, however, urges that respondent's testimony is so improbable and so thoroughly and successfully contradicted that the verdict is entirely lacking in evidentiary support

and should be set aside. It is true, as above indicated, that respondent's case rests solely and entirely upon the testimony of respondent himself and that this testimony was unequivocally contradicted by the testimony of witnesses produced by appellant. It may be conceded that a verdict in appellant's favor would have had ample evidentiary support. Nevertheless, the jury had an opportunity not afforded to an appellate court confined to an examination of the printed record. The jury had the opportunity to observe the various witnesses as they gave their testimony, their demeanor and the manner in which they testified. That the jury should accept the uncorroborated testimony of respondent contradicted though it was as to many material features does not constitute ground for reversal (*Leffingwell* v. *Faubion*, 89 Cal. App. 157 [264 Pac. 306]). Upon the completion of the trial, the various issues presented were submitted to them under appropriate instructions. It is deserving of comment that the jury not only returned a general verdict in respondent's favor but also answered fourteen special interrogatories prepared by appellant in such manner as to indicate that, with two exceptions, its members accepted as true in all particulars the testimony of respondent. The findings contrary to respondent's testimony related to the date on which respondent signed the contract and the time when the date August 16, 1928, was placed in the contract. Respondent testified that he signed the contract on August 16, 1928, and that immediately prior to his signing the instrument, appellant's manager wrote in the date, August 16, 1928. Appellant's manager testified that respondent signed the contract on August 9, 1928. This testimony was corroborated by the testimony of two other witnesses. The manager also testified that the date, August 16, 1928, was written in by him during the evening of August 16, 1928, at the time the contract was executed by appellant's president and secretary. This testimony was corroborated by the testimony of the secretary of appellant. The jury resolved the conflict in the evidence as to these matters in appellant's favor and found that the written contract was signed by respondent on August 9, 1928, and that the date, August 16, 1928, did not appear on the instrument when respondent affixed his signature to it. Obviously the time when the date was actually written in is immaterial to

the principal issue presented. Nor is the date on which respondent signed the written instrument of substantial importance. There is no dispute that he signed the contract. ▓▓ The important question was whether the contract sued upon was the contract which respondent made. The date on which respondent affixed his signature is purely incidental. The jury found that the contract sued upon was not the contract which respondent made and the finding in this particular is in conformity with and supports the general verdict rendered in respondent's favor. It cannot be said that the jury's findings with respect to the incidental facts mentioned are so antagonistic to the general verdict as to be absolutely irreconcilable. Manifestly, neither of the special findings mentioned would authorize a judgment different from that permitted by the general verdict. Neither of such findings may therefore be said to be inconsistent with the general verdict. (*Law* v. *Northern Assur. Co.*, 165 Cal. 394 [132 Pac. 590].)

▓▓ Appellant further urges as ground for reversal that it was not permitted to show that the prestige of appellant was injured by the alleged breach of the contract by respondent in withdrawing from the association. Loss of prestige occurring through unauthorized withdrawal from an association of the character of appellant would appear to be a proper element of damage (*Anaheim C. F. Assn.* v. *Yeoman*, 51 Cal. App. 759 [197 Pac. 959]). But this element is important only in determining whether the present case is one which falls within the rule declared in sections 1670 and 1671 of the Civil Code which permits the enforcement of a condition fixing damages in advance: "When, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." The jury expressly found that it would be impracticable and extremely difficult to fix the actual damage sustained by appellant and this finding is conclusive in the absence of any attack upon it (*Poultry Producers, etc.*, v. *Murphy*, 64 Cal. App. 450 [221 Pac. 962]). The refusal by the court to admit the proffered evidence tending to prove loss of prestige becomes unimportant therefore in the face of the express finding mentioned.

▓▓ It is further contended that the court erred in admitting testimony of respondent which tended to show a waiver by the manager of appellant of the condition requir-

ing written notice of cancellation between certain specified dates. This testimony related to two conversations between respondent and the manager, one of which, the testimony showed, occurred prior to December 15, 1928, and the second on December 19, 1928. It may be conceded that, in the absence of a showing that appellant's manager was authorized by the association to waive the provision requiring written notice of withdrawal at the time designated in the by-laws, such waiver would not bind appellant. The record, however, shows that the testimony of whose admission appellant complains, was admitted, not for the purpose of showing waiver, but for the express purpose of corroborating respondent's testimony that the contract which he actually made with appellant was for the 1928 season only. It was evidence competent for the purpose for which it was admitted and at the time of its reception, the court carefully instructed the jury that it was to be considered only as tending to corroborate respondent's testimony in the respect suggested.

Appellant complains that the court at the conclusion of the trial refused to instruct the jury as requested by appellant, that the manager had no power to waive the by-laws of the association relating to the substance of the contract between the parties unless he was authorized to do so by appellant's board of directors. It appears, however, that the court gave other instructions submitted by appellant in which the jury was told that, in order to find a waiver of the provision requiring the giving of written notice of cancellation it was required that the jury find that appellant association had an actual intention to waive the provision with full knowledge of the right which it intended to waive; that in the absence of express agreement, waiver might not be implied unless appellant was by its conduct estopped from relying upon the provision requiring the giving of written notice; that the burden of proving waiver or estoppel was upon respondent. We are of the opinion that the jury was sufficiently advised by the court with respect to the feature of waiver and that the court's refusal to give the instruction mentioned was not prejudicial to appellant. We are further of the opinion that the testimony of whose admission appellant complains was sufficiently and properly limited by the court's instruction at the time of its reception. Furthermore, it is apparent from the answers returned to

the special interrogatories that the jury found in accordance with respondent's contention that the contract made by respondent was not the contract for whose breach appellant brought the action but was a contract for the 1928 season, only, that it terminated at the end of that season, and that it contained no provision requiring the giving of notice of cancellation at a designated time. With a finding of this character the question of waiver becomes unimportant and the only excuse for its appearance is found in the replies to two interrogatories included among the fourteen submitted by appellant wherein the jury found that appellant's manager prior to December 16, 1928, informed respondent that an oral notice of withdrawal was sufficient and further informed respondent that a written notice of withdrawal received subsequent to December 15, 1928, would be accepted as sufficient. From this it is argued that the jury must have found a waiver of the provision requiring the giving of written notice of withdrawal between the dates designated in the by-laws contrary to the court's instruction on the matter of waiver. Appellant's reasoning is not persuasive. The evidence relating to the conversations between respondent and appellant's manager was in direct conflict. The evidence was admitted solely for the limited purpose stated. The jury resolved the conflict in evidence as to this feature in respondent's favor as it manifestly had the right to do under the interrogatories submitted. This evidence, it is true, is the only evidence which appears in the case which could relate to the question of waiver. Nevertheless, the jury did not specifically find a waiver and from the jury's finding that the contract sued upon was not the contract which respondent made and that the contract actually entered into did not contain the provision requiring written notice of withdrawal to be given at a designated date, it is not to be presumed that the jury, in disobedience to the court's instruction, found that there was a waiver of a provision that was not included in the contract which respondent made.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.